**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 09-794** |
| **RAYMOND HORSCH** | **:** | |

**GOVERNMENT'S RESPONSE TO THE PHILADELPHIA INQUIRER, LLC'S MOTION TO SEEK ACCESS TO CERTAIN JUDICIAL DOCKET ENTRIES**

The United States of America, by and through its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Justin Ashenfelter, Assistant United States Attorney for the district, hereby responds to intervenor Philadelphia Inquirer LLC's motion for access to records and supporting memorandum of law [ECF 56, 59], as follows:

## I. PROCEDURAL BACKGROUND

On January 26, 2010, a grand jury in this District returned a superseding indictment charging Raymond Horsch with manufacturing 100 or more marijuana plants (Count One), possession with intent to distribute 100 or more marijuana plants (Count Two), possession of a short-barreled shotgun in furtherance of a drug trafficking crime (Count Three), and possession of a firearm and ammunition by a felon (Count Four). ECF 6.

Counsel for Horsch thereafter filed motions to continue the trial date, all of which were sealed by order of the Court. *See* ECF 13, 17, 18, 21.

On January 10, 2011, Horsch entered a plea of guilty to Counts Two, Three, and Four of the superseding indictment. At the time of his guilty plea, Horsch entered into a plea agreement

with the government, and his related plea documents and the transcript of his plea hearing were filed under seal. *See* ECF 26,[1] 27, 28, 29.

On June 28, 2012, the Honorable R. Barclay Surrick sentenced Horsch to a term of 54 months' imprisonment, five years of supervised release and a $300 fine. At the time of sentencing, the government moved to dismiss Count One of the superseding indictment, and the Court granted that motion. The transcript of the sentencing hearing was ordered sealed, and Court granted motions for the government and defense counsel's sentencing memoranda to all be filed under seal. *See* ECF 37, 40,[2] 42, 43, 44, 45. On July 3, 2012, in a sealed proceeding, the Court resentenced Horsch and imposed the same sentence, while directing the Bureau of Prisons credit Horsch with custodial time spent with the United States Marshal Service. ECF 46,[3] 49.

Horsch died in or about May 2025. In June 2026, state and federal law enforcement agencies launched an investigation of Horsch's criminal activities over the last few decades, to include his suspected involvement in the disappearance of several women in the Philadelphia area. This investigation has garnered significant media coverage locally and nationally, and the lurid details of the allegations against Horsch have generally captivated the public's attention. The investigation is ongoing as of this writing.

On October 5, 2026, the Philadelphia Inquirer, LLC ("The Inquirer") filed a motion seeking to access the sealed docket entries in ECF Numbers 13, 17, 18, 21, 27, 28, 29, 37, 42, 43,

---

[1] The transcript of Horsch's plea hearing is not available as of this writing, as it has not been transcribed.

[2] The transcript of Horsch's sentencing hearing is not available as of this writing, as it has not been transcribed.

[3] The transcript of Horsch's re-sentencing hearing is not available as of this writing; according to the docket, it has been transcribed but is unviewable until November 2026.

44, and 45, and transcripts of the January 10, 2011 plea hearing (ECF 26) and the June 28, 2012 sentencing hearing (ECF 40). *See* ECF 56-2, p. 3. In support of its motion, The Inquirer cited the First Amendment and the common law right of access to judicial proceedings and records. The Inquirer posits, without citing the content of the docket entries, that the sealed entries are "subject to a presumptive right of access." *Id.* at 5. The government agrees that some of the docket entries need not be sealed any longer. However, the government's sentencing memorandum/downward departure motion should remained sealed. The government asks the Court to reserve its decision as it relates to the sealed transcript of the sentencing hearing, as the government has not yet received or reviewed it.[4]

## II. THE SEALED DOCKET ENTRIES AT ISSUE

The Inquirer seeks unsealing of the following docket entries, denoted by docket number and a description offered by the Court, and separated by categories of proceedings as follows:

**Motions and Orders Regarding Continuances:**

13 - SEALED MOTION BY RAYMOND HORSCH. (jh, ) (Entered: 04/28/2010

17 - SEALED MOTION BY RAYMOND HORSCH. (jh, ) (Entered: 08/10/2010)

18 ORDER GRANTING 17 SEALED MOTION.Signed by HONORABLE R. BARCLAY SURRICK on 8/9/10.8/10/10 ENTERED.(jh, ) (Entered: 08/10/2010)

21 - SEALED JOINT MOTION FOR CONTINUANCE OF TRIAL. (SEALED AND IMPOUNDED) (jh, ) (Entered: 10/21/2010)

**Guilty Plea Proceedings:**

26 – [Plea transcript] Change of Plea Hearing as to RAYMOND HORSCH held on 1/10/11. Plea entered as to RAYMOND HORSCH (1) Guilty Count 2s,3s,4s.

27 - Plea Document as to RAYMOND HORSCH. (jh, ) (Entered: 01/11/2011)

[4] The government expects the transcript to be transcribed in approximately two weeks.

28 - Plea Document as to RAYMOND HORSCH. (jh, ) (Entered: 01/11/2011)

29 - JUDICIAL DOCUMENT AS TO RAYMOND HORSCH. Signed by HONORABLE R. BARCLAY SURRICK on 1/10/11. 1/11/11 Entered. (jh, ) (Entered: 01/11/2011)

**<u>Sentencing Proceedings:</u>**

37 - ORDER AS TO RAYMOND HORSCH RE 36 Sentencing Document filed by USA THAT THIS ORDER AND ACCOMPANYING DOCUMENT ARE SEALED UNTIL FURTHER ORDER OF COURT. Signed by HONORABLE R. BARCLAY SURRICK on 6/22/12. 6/22/12 Entered and Copies Faxed BY CHAMBERS. (cmc) (Entered: 06/22/2012)

40 – [Sentencing transcript] Sentencing held on 6/28/12, for RAYMOND HORSCH (1), Count(s) 1s, DISMISSED ON GOVT'S MOTION; Count(s) 2s, 3s, IMPRISONMENT 54 MONTHS CONCURRENTLY; SUPERVISED RELEASE 5 YEARS CONCURRENTLY; SPECIAL ASSESSMENT $300.00; Count(s) 4s, IMPRISONMENT 54 MONTHS CONCURRENTLY; SUPERVISED RELEASE 3 YEARS CONCURRENTLY; SPECIAL ASSESSMENT $300.00.Court Reporter ESR. (jh, ) (Entered: 06/29/2012)

42 - SENTENCING DOCUMENT as to RAYMOND HORSCH (mac, ) (Entered: 07/05/2012)

43 - JUDICIAL DOCUMENT AS TO RAYMOND HORSCH. Signed by HONORABLE R. BARCLAY SURRICK on 7/3/12.7/5/12 Entered and Copies Mailed by Chambers. (mac, ) (Entered: 07/05/2012)

44 - AMENDED Sentencing Document by USA as to RAYMOND HORSCH. CERTIFICATE OF SERVICE. (ap, ) Modified on 7/5/2012 (ap, ). (Entered: 07/05/2012)

45 - JUDICIAL DOCUMENT AS TO RAYMOND HORSCH (1). Signed by HONORABLE R. BARCLAY SURRICK on 7/3/2012.7/5/2012 ENTERED AND COPIES MAILED BY CHAMBERS.(ap, ) (Entered: 07/05/2012)

Upon review of the content of these documents – while recognizing that Horsch’s case has concluded and Horsch is deceased, and balancing the compelling public interest and law enforcement’s interest in preserving the confidential nature of certain investigative materials –

the government does not oppose part of the Inquirer's motion, that is, to unseal the docket entries related to Motions and Orders Regarding Continuances (ECF 13, 17, 18 and 21) and Guilty Plea Proceedings (ECF 26, 27, 28 and 29). However, for good cause, the government opposes the unsealing of two docket entries related to the Sentencing Proceedings, ECF 40 (the transcript of the sentencing hearing)[5] and 44 (the government's downward departure motion). The government does not oppose the unsealing of the sentencing-related documents in ECF 37, 42, 43, and 45, as they do not reveal sensitive investigative information.

## III. ARGUMENT

### A. <u>The Common Law Right of Access and the First Amendment</u>

In criminal and civil cases, it is well-settled that there is a common law public right of access to judicial proceedings and records. *See United States v. Criden*, 648 F.2d 814, 819 (3d Cir. 1981) *(Criden I); In re Avandia Mktg., Sales Pracs. & Prods. Litig.,* 924 F.3d 662, 672 (3d Cir. 2019). Although the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that "the right is not absolute." *Littlejohn,* 851 F.2d at 678; *Leucadia,* 998 F.2d at 165 (same); *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1070 (3d Cir.1984) (same). The presumption of public access may be rebutted. *See Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 662 (3d

[5] As mentioned above, the transcript of this proceeding has not been transcribed. The Court's deadline for the government to respond to the instant motion did not provide ample time to order and review the transcript. Nevertheless, the government's practice at sentencing for a cooperating defendant is to detail the nature and extent of a defendant's cooperation on the record. The government takes the position that the transcript of the sentencing proceeding should remained sealed for that reason, as it likely describes information that Horsch proffered to the government. The government will order the transcript, but requests that the Court reserve its decision regarding ECF 40 until the government has reviewed its contents and evaluates whether it is appropriate to oppose or consent to The Inquirer's motion regarding that document.

Cir.1991). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Littlejohn,* 851 F.2d at 678 (quoting *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). Thus, although a document may be characterized as a "judicial record, it may not 'necessarily be made available for public consumption.'" *Konrad*, 2011 WL 1549494, at *7 (quoting *United States v. Kushner,* 349 F. Supp. 2d 892, 903 (D.N.J. 2005)). "[W]hen there are conflicting interests, a balancing process is contemplated. '[T]he strong common law presumption of access must be balanced against the factors militating against access.'" *In re Cendant Corp.*, 260 F.3d at 194 (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 165 (3rd Cir. 1993)) (quoting *Bank of Am. Nat. Tr. and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3rd Cir. 1986)).

In order to override the common law right of access, the party seeking the sealing of part of the judicial record "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking [sealing]." *Miller,* 16 F.3d at 551 (citing *Publicker,* 733 F.2d at 1071). In delineating the injury to be prevented, specificity is essential. *See Publicker,* 733 F.2d at 1071. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. As is often the case when there are conflicting interests, a balancing process is contemplated. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). "[T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs

the presumption." *Leucadia,* 998 F.2d at 165 (quoting *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.,* 800 F.2d 339, 344 (3d Cir. 1986)).

Together with the common law right of public access to judicial records, the public also has a broader First Amendment right of access to criminal proceedings, including documents involved in the proceedings. *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016). The First Amendment right of access does not apply to all documents and proceedings in a criminal case. Rather, determining the right of access under the First Amendment "requires a two-prong evaluation of 'whether the place and process have historically been open to the press' and 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *PG Pub. Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013) (quoting *Press-Enterprise II*)).

The analysis is similar whether a court considers the right of access either under the common law or the First Amendment. *United States v. Harding*, 2025 WL 1133493, at *7 (W.D. Pa. Apr. 16, 2025). "District courts should balance the relevant interests irrespective of whether the public has a First Amendment or common law right to the materials." *Wecht*, 484 F.3d 194 at 212.

### B. Only Two Docket Entries Related to Horsch's Sentencing Should Remain Sealed.

At the time of his guilty plea, Raymond Horsch entered into a cooperation plea agreement with the government. The terms of the agreement were standard and uncontroversial. In essence, if Horsch provided truthful and reliable information about his own or others' criminal activity, the government may, in its sole discretion, file a motion for a downward departure at the

time of sentencing, permitting the district court to impose a sentence below the bottom of the applicable guideline range.

As a general matter, almost always, the government seeks to keep confidential both (1) the simple fact that a criminal defendant is cooperating with authorities, and (2) the nature and extent of a defendant's cooperation efforts. Indeed, efforts to conceal whether a defendant is cooperating with the government have been undertaken by this Court. For example, the Chief Judge's Standing Order issued on February 5, 2026, created a process by which all criminal defendants have sealed portions of their dockets and transcripts at the time of plea and sentencing. The purpose of the Order was to intentionally obfuscate, to any objective onlooker, the reality of a defendant's cooperation. By making all defendants' dockets subject to some sealed entries, it becomes difficult, if not impossible, to glean who offered cooperation and who did not.

This process was designed to avoid what previously raised suspicions about a defendant's cooperation. Historically, criminal cases pending in the district court (Horsch's case is one of those cases) reflected docket entries that were otherwise public but for the existence of sealed documents surrounding the guilty plea and sentencing. According to some, especially those familiar with the federal criminal justice system, a cursory review of a criminal docket that reflected this discreet collection of sealed documents bore the hallmark of a cooperating defendant. In some cases, to avoid even this appearance, the government sought to seal a defendant's entire docket completely. The advent of the Standing Order sought to correct this predicament by making it appear possible that every defendant may or may not be cooperating with the government.

All of this is to underscore the recognized tradition and necessity to keep a defendant's cooperation confidential and non-public. Secrecy in cooperation is a method to avoid disclosure of ongoing investigations and potential harm to defendants whose information may subject them or their families to physical danger. The government takes the position that any information a defendant provides during his cooperation is fully protected, revealed only when statutes or rules require its disclosure at the appropriate time. In the government's view, this policy applies no matter the defendant's ilk, character or crimes; the government's mission to protect proffered information will be honored and upheld whether a defendant is alive or dead. This is not unreasonable.

The federal criminal justice system rewards cooperation, providing mechanisms by which a defendant stands to mitigate his exposure to lengthy prison time and punishment through providing information about crimes committed by others. *See, e.g.*, USSG § 5K1.1 and 18 U.S.C. § 3553(e), Fed. R. Crim. Pro. 35. The government capitalizes on this component of the system by leveraging the strength of its evidence and the prospect of punishment to exert information from defendants who seek to spare themselves maximum or mandatory punishment. The system runs in large part because defendants regularly cooperate. Simply put, without this lawful arrangement, investigations would stymie and prosecutions would fail. To honor its agreements with defendants – that is, cooperation in exchange for the advocacy of leniency at sentencing – the government represents that it will protect a defendant's information and only disclose it when legally required or necessary.

Raymond Horsch is dead. Therefore, the fact that he entered a cooperation plea agreement with the government need not be kept hidden any longer. That is because the prospect

of any danger to him is extinguished by his death. However, the essence of the information he provided to the government during his cooperation is not subject to disclosure or public consumption. He did not offer testimony against any criminal defendant; therefore, his prior statements are neither subject to disclosure under 18 U.S.C. § 3500, nor do they tend to exculpate or exonerate any defendant charged in a criminal case. The information Horsch provided during his cooperation is law enforcement sensitive and the government's obligation to maintain the privacy of that information remains after Horsch's death. In sum, there is no triggering event that lawfully requires unsealing or disclosure of information he provided. Public or media curiosity in and of itself does not mandate disclosure of this information.

The Third Circuit instructs that the presumption of openness is strongest where it "promotes public oversight of the process by which the government investigates and prosecutes its citizens." *United States v. Konrad*, 2011 U.S. Dist. LEXIS 43206, at *24 (E.D. Pa. Apr. 19, 2011). But public oversight does not require—and the law does not permit—the exposure of sensitive investigative details. Indeed, the Third Circuit has also made clear that even where a presumptive right of access exists, a court must deny access when disclosure would "substantially impair" a compelling governmental interest. *United States v. Antar*, 38 F.3d 1348, 1359 (3d Cir. 1994). That is exactly the situation here. Were the government to consent to disclosure of investigative materials contained in Horsch's sentencing documents, the government would be complicit in betraying confidences of all criminal defendants who accept its representations that the information they provide will only be disclosed when required by statute or rule. This scenario could frustrate future cooperation from defendants and have a chilling effect on those seeking to engage with the government to aid its investigations.

**CONCLUSION**

Accordingly, the government respectfully requests that the Court order that docket entries in ECF 40 and 42 remain sealed. With respect to ECF 40, the government requests that the Court reserve decision until the transcript of the sentencing hearing is available. The government does not oppose The Inquirer's motion to unseal the entries in ECF 13, 17, 18, 21, 26, 27, 28, 29, 37, 43, 44, and 45.

Respectfully submitted,

DAVID METCALF
United States Attorney

*s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

Dated: October 27, 2026

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the government's response was served on counsel via ECF:

Eli Segal, Esq.
esegal@stapletonsegal.com

*s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

Dated: October 27, 2026